# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

**Angel Betancourt-Perez,**

   Petitioner,

         v.

**United States of America,**

   Respondent.

CIVIL NO. 18-1088 (PG)
Related Crim. No. 10-175 (PG)

## OPINION AND ORDER

Before the court is petitioner Angel Betancourt-Perez's ("Petitioner" or "Betancourt-Perez") motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255 (Docket No. 1) and the United States' (or the "government") opposition thereto (Docket No. 16). For the following reasons, the court **DENIES** Petitioner's motion to vacate.

## I. BACKGROUND

Betancourt-Perez was indicted in three separate criminal cases. First, on May 5, 2010, a grand jury returned a multi-count indictment against Betancourt-Perez and sixty-nine (69) other coconspirators charging them with several drug and firearm-related offenses. See Crim. Case No. 10-175 (PG), Docket No. 3. Count One charged Betancourt-Perez with conspiracy to possess with intent to distribute controlled substances, in violation of 21 U.S.C. §§ 841(a)(1), 846, and 860. See Crim. No. 10-175, Docket No. 3. The indictment deemed Petitioner a runner for a drug trafficking organization ("DTO") that sold crack, heroin, cocaine, marijuana, Percocet, and Xanax at a public housing project in Carolina, Puerto Rico and its surrounding areas. Id. Petitioner remained a fugitive until his arrest in May of 2011.

On May 12, 2011, a grand jury returned the second indictment against Betancourt-Perez. He was charged with possession with intent to distribute cocaine and marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and(b), and possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A). See Crim. No. 11-181 (PG), Docket No. 1. On September 23, 2011, Betancourt-Perez was indicted in a third criminal case and charged with possession with intent to distribute more than 1,000 kilograms of marijuana. See Crim. No. 11-367 (PG), Docket No. 3.

### *Plea & Sentencing*

Betancourt-Perez and the government negotiated a plea deal that took care of all the charges in all three of his criminal cases. See Crim. No. 10-175, Docket No. 1985 (Plea Agreement). Specifically, Betancourt-Perez agreed to plead guilty to one count of conspiracy to possess with intent to distribute narcotics from each of the three indictments (Crim. No. 10-175, 11-181 and 11-367) and the firearm count from the second indictment (Crim. No. 11-181). The plea agreement specified the following types and quantities of drugs involved in each of the conspiracy counts: between 3.5 and 5 kilograms of cocaine, between 2 and 3.5 kilograms of cocaine, and between 100 and 400 kilograms of marijuana. See id. at pp. 6-10. Based on the relatedness of the drug crimes, the agreement grouped the three conspiracy counts together for plea and sentencing purposes pursuant to Section 3D1.2(b) and (d) of the United States Sentencing Guidelines ("U.S.S.G.") and calculated, albeit incorrectly, a guideline sentence range of 51 to 63 months.[1] See id. at 10-11.

---

[1] Again, this calculation was incorrect, and the First Circuit Court of Appeals explained why. See United States v. Betancourt-Perez, 833 F.3d 18, 20-22 & n. 4 (1st Cir. 2016). The court adopts and incorporates by reference that explanation herein.

The parties agreed to recommend concurrent sentences between 60 to 120 months for the conspiracy counts and a consecutive sentence of 60 months for the firearm count. See id. Pursuant to Federal Criminal Procedure Rule 11(c)(1), the agreement warned that:

> The defendant is aware that the defendant's sentence is within the sound discretion of the sentencing judge and the advisory Sentencing Guidelines …. The defendant understands and acknowledges that the Court is not a party to this Plea Agreement and thus, is not bound by this agreement or the sentencing calculations and/or recommendations contained herein. Defendant specifically acknowledges and admits that the Court has jurisdiction and authority to impose any sentence within the statutory maximum set for the offense to which the defendant pleads guilty. Defendant is aware that the court may accept or reject the Plea Agreement, or may defer its decision…until it has considered the pre-sentence report. Should the Court impose a sentence up to the maximum established by statute, the defendant cannot, for that reason alone, withdraw a guilty plea, and will remain bound to fulfill all of the obligations under this Plea Agreement.

Id. at p. 6.

Furthermore, the agreement included the following appeal waiver provision:

> The defendant knowingly and voluntarily waives the right to appeal the judgment and sentence in this case, provided that the defendant is sentenced in accordance with the terms and conditions set forth in the Sentence Recommendation provisions of this Plea Agreement.

Id. at p. 11.

Petitioner entered his guilty plea at the change of plea hearing held on October 18, 2013. See Crim. Case No. 10-175, Dockets No. 1987 and 2054. On April 11, 2014, the court sentenced Betancourt-Perez to 108 months of imprisonment as to each conspiracy count,[2] to be served concurrently with each other, and to 60 months on the firearm count, to be

---

[2] The court reasoned that the sentenced imposed was still within the 60-to-120-month range stipulated by the parties in the plea agreement. See Crim. No. 10-175, Docket No. 2007.

served consecutively. Altogether, he was sentenced to a total term of 168 months of imprisonment.

### *Post-Conviction Proceedings*

On appeal, Betancourt-Perez challenged the court's refusal to follow the plea agreement's guideline calculations at sentencing.[3] See Betancourt-Perez, 833 F.3d at 21. Nonetheless, the First Circuit determined that Petitioner's sentence fell within the parameters of the parties' recommendations by way of a correct arithmetic, and therefore, within the plea agreement's appeal waiver. Furthermore, the First Circuit highlighted that Betancourt-Perez expressly acknowledged (in both the plea agreement and during his change-of-plea hearing) that the parties' guideline calculations were not binding on the sentencing court. See id. at 23. The Court thus dismissed the appeal. Id. at 24.

On February 14, 2018, Betancourt-Perez filed the pending motion to vacate under § 2255, seeking to vacate his sentence on ineffective assistance of counsel grounds. See Docket No. 1. Mainly, he claims that attorney Jose R. Olmo Rodriguez, who represented him in the underlying criminal proceedings, failed to adequately explain the applicable sentencing guidelines.[4] See Docket No. 1-1 at 7-8. In its response, the government correctly argues that

---

[3] Unlike the plea agreement, the Presentence Investigation Report ("PSR") prepared prior to sentencing included the correct guideline ranges for the court to consider. On appeal, the First Circuit concluded not only that this court applied the correctly calculated guideline range, but also, that the ultimate 168-month imprisonment sentence fell within the parameters of the parties' recommendation. See Betancourt-Perez, 833 F.3d at 21-22.

[4] Betancourt-Perez's motion raises at least two other claims. First, he alleges that counsel's performance led him to withdraw a pending motion to suppress and waive to waive his Fourth Amendment rights. Second, he challenges the court's "wrongful exclusion of evidence that was crucial to his defense[.]" Docket No. 1-1 at p. 3. Petitioner fails to develop both claims. Therefore, they are deemed waived. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").

Betancourt-Perez fails to satisfy Strickland's two-prong test, and therefore, his ineffective assistance claims fails. See Docket No. 16 at p. 6.

After a careful review of the evidence on record, the plea agreement and the transcripts of the change of plea and sentencing hearings, the court denies Petitioner's motion for the reasons explained below.

## II.   STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 2255, a federal prisoner may move to vacate, set aside, or correct his sentence "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a); Hill v. United States, 368 U.S. 424, 426-427 (1962); Ellis v. United States, 313 F.3d 636, 641 (1st Cir. 2002).

Moreover, the Sixth Amendment guarantees that in all criminal prosecutions, the accused have a right to the assistance of counsel for their defense. U.S. Const. amend. VI. It has long been recognized that the right to counsel means the right to the effective legal assistance. Strickland v. Washington, 466 U.S. 668, 686 (1984) (quoting McMann v. Richardson, 397 U.S. 759, 771 n. 14 (1970)). Where, as here, the petitioner moves to vacate his sentence on an ineffective assistance of counsel basis, he must show that "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result." Strickland, 466 U.S. at 686; see also Argencourt v. United States, 78 F.3d 14, 16 (1st Cir. 1996) (a petitioner seeking to vacate his sentence based on the ineffective assistance of counsel bears a very heavy burden).

For Betancourt-Perez's claim to succeed, he must satisfy a two-part test. First, he needs to show that "counsel's representation 'fell below an objective standard of reasonableness.'" Padilla v. Kentucky, 130 S. Ct. 1473, 1482 (2010) (quoting Strickland, 466 U.S. at 688). Second, he needs to establish a reasonable probability that, but for counsel's errors, the result of the proceeding would have been more favorable to him. See United States v. Carrigan, 724 F.3d 39, 44 (1st Cir. 2013) (citing Missouri v. Frye, 132 S. Ct. 1399, 1409 (2012)). Petitioner must demonstrate both incompetence and prejudice and failure to prove one element proves fatal for the other. See United States v. Caparotta, 676 F.3d 213, 219 (1st Cir. 2012). Courts "need not address both requirements if the evidence as to either is lacking." Sleeper v. Spencer, 510 F.3d 32, 39 (1st Cir. 2007); see Strickland, 466 U.S. at 697 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice…that course should be followed.")

The right to effective assistance of counsel applies at the plea-bargaining stage. See Padilla, 130 S. Ct. at 1480-81; see also Hill v. Lockhart, 474 U.S. 52 (1985). "It has long been recognized that the negotiation of a plea bargain is a critical phase of litigation for purposes of the Sixth Amendment right to effective assistance of counsel." Id. In advising a client during the plea-bargaining stage, "[c]ounsel must predict how the facts, as he understands them, would be viewed by the court." McMann, 397 U.S. at 769. Even if counsel's prediction had been inaccurate, an inaccurate prediction about sentencing will generally not alone be sufficient to sustain a claim of ineffective assistance of counsel. See Knight v. United States, 37 F.3d 769, 775, (1st Cir. 1994).

### III. DISCUSSION

As note earlier, Betancourt-Perez claims he received ineffective assistance of counsel at the plea and sentencing stage because his attorney misinformed him or otherwise failed to properly advise him with respect to his true sentence exposure. He alleges that because of counsel's performance, he plead guilty and received a harsher and longer sentence.

Betancourt-Perez's weak attempt to support his ineffective performance claim with the record is unpersuasive at best. In fact, the only instance in which Betancourt-Perez points to the record, period, is when he cites counsel's expressions to the court at the sentencing hearing. See Docket No. 1-1 at p. 8, n. 1. At sentencing, counsel requested the court to reconsider the sentence by considering the plea agreement's incorrect calculations. See Crim. No. 10-175, Docket No. 2023 at pp. 28-29. Responding to counsel's request, the court explained that it was not bound by the parties' calculations and that the sentence imposed was still within the range stipulated by the parties. Id. at pp. 22-27.

The evidence on record, including the plea agreement and the transcripts from the change of plea and sentencing hearings, contradicts Petitioner's allegations. During the change of plea hearing Betancourt-Perez was placed under oath, addressed personally and in open court, advised of his constitutional rights and "the fact that [he was] waiving those rights by pleading guilty." See Crim. No. 10-175, Docket No. 2054 at p. 17. Petitioner was aware of the charges against him, he confirmed that he had enough time to confer with counsel before the hearing, and that he had participated in preparing his defense. Id. at pp. 13-14. Notably, Petitioner also stated that he was satisfied with his attorney's services. Id.

The evidence further demonstrates that Betancourt-Perez understood the minimum and maximum statutory penalties, fines and supervised release terms for each of the counts

he plead guilty to, and the fact that the court had authority and discretion to impose higher or stricter sentencing terms (up to the maximum provided by statute). Id. 17-24. The court quotes a relevant portion of the change of plea colloquy below:

> The court: What I want you to understand is that since I am not part of the plea agreement, it means that I am not bound by any sentencing guideline calculations, sentencing stipulations, or sentencing recommendations which are contained in the plea agreement; do you understand that?
>
> Betancourt-Perez: I understand that clearly, Your Honor.
>
> ...
>
> The court: And since I am not part of the plea agreement, it also means that if I were to impose a term of imprisonment that turns out to be higher than any one you might be expecting, that reason alone would not be grounds for the Court to allow you to withdraw your pleas of guilty and you would still be bound by your plea agreement; do you understand that?
>
> Betancourt-Perez: I understand.

Id. at 23-24.

The court also asked Betancourt-Perez at least three times if anyone had threatened or coerced him into pleading guilty, and he replied "no." See id. at pp. 22 and 30. Upon further questioning, Betancourt-Perez assured the court that he had discussed the plea agreement with his attorney, he agreed with its terms, and he was satisfied with his legal representation. See id. at pp. 14 and 29-31, 36. The court finds Petitioner's statements at the plea hearing "sufficiently conclusive to contradict his [ineffective assistance] claims." See United States v. Santiago Miranda, 654 F.3d 130, 138 (1st Cir. 2011) (quoting United States v. Pulido, 556 F.3d 52, 60 (1st Cir. 2009)).

The First Circuit has held that an attorney's "failure to properly calculate [a defendant's] sentence exposure, by itself, does not amount to prejudice" under Strickland. Moreno-Espada v. United States, 666 F.3d 60, 65 (1st Cir. 2012) (finding that counsel was not ineffective for failing to advice or otherwise disclose defendant's true sentencing exposure because, inter alia, the harsher sentence ultimately imposed was always within the range of possible sentences that defendant could face under the plea agreement). Here, even if counsel's performance fell below an objective standard of reasonableness on the basis alleged by Betancourt-Perez, he has not demonstrated prejudice under Strickland.

Again, and as the First Circuit determined, "the text of the plea agreement, as well as the transcripts from the change-of-plea and sentencing hearings, all make plain that Betancourt-Perez fully understood" he negotiated for a total sentence between 120 and 180 months. Betancourt-Perez, 833 F.3d at 23. Ultimately, Petitioner received a sentence of 168 months that, even by way of a different (but correct) arithmetic, still abides by the agreement's terms. See id.

Because Petitioner has not satisfied the Strickland test, his ineffective assistance of counsel claim fails.

## IV. EVIDENTIARY HEARING

Betancourt-Perez requests an evidentiary hearing. See Docket No. 1-1 at p. 9. However, evidentiary hearings in § 2255 cases are the exception, not the norm, and petitioners carry a heavy burden to demonstrate that a hearing is warranted. See Moreno–Morales v. United States, 334 F.3d 140 (1st Cir. 2003). A hearing "is not necessary when a § 2255 petition is inadequate on its face, or although facially adequate, is conclusively refuted

as to the alleged facts by the files and records of the case." United States v. DiCarlo, 575 F.2d 952, 954 (1st Cir. 1978).

Here, even if the court deemed his motion to vacate as facially adequate, the fact of the matter is that the record belies his claims. Having ruled that Betancourt-Perez's ineffective assistance of counsel claim lacks merit, the court finds that a hearing is not warranted. Accordingly, his request is **DENIED.**

## V. CONCLUSION

Based on the foregoing, Petitioner's request for habeas corpus relief under 28 U.S.C. § 2255 (Docket No. 1) is **DENIED** and the case is, therefore, **DISMISSED WITH PREJUDICE**. Judgment shall be entered accordingly.

## VI. CERTIFICATE OF APPEALABILITY

It is further ordered that no certificate of appealability should be issued if Petitioner files a notice of appeal because there is no substantial showing of the denial of a constitutional right within the meaning of 28 U.S.C. § 2253(c)(2).

**IT IS SO ORDERED**.

In San Juan, Puerto Rico, December 14, 2018.

S/ JUAN M. PÉREZ-GIMÉNEZ
**JUAN M. PÉREZ-GIMÉNEZ
SENIOR U.S. DISTRICT JUDGE**